## L. J. HAWKINS V. C. B. POTTER ET AL.

### Decided May 19, June 30, 1910.

**1.—Vendor and Purchaser—Liens—Purchasers of Incumbered Land—Order of Priority.**

When lands subject to an incumbrance are sold to different purchasers, in different parcels and at different times, as between the several grantees, the lands are chargeable in equity in the inverse order of their alienation.

**2.—Same—Repurchase and Resale by Grantor.**

An owner of incumbered land conveyed it, at different times, to two different purchasers, that taken by the second vendee becoming thereby first liable to satisfy the lien. Afterwards the grantor repurchased the tract first conveyed, and this he subsequently sold to another. Held, that when he reacquired the tract first sold it became, in his hands, subject to the lien in priority to the lands held under his second conveyance; the subsequent purchaser from him took such rights only as his grantor possessed; and on foreclosure, his tract was properly ordered to be first sold for satisfaction of the lien.

**3.—Same—Reason of Rule.**

The rule as to priority of subjection to liens between purchasers of different parts of encumbered land, rests on principles of equity, and not on the effect of the grantor's covenants of warranty.

**4.—Record of Title—Notice—Identity.**

One who claimed title under a conveyance from John W., whom other deeds in his chain of title designated as J. W. W., could not claim that the record of a conveyance to another from J. W. W. was insufficient to inform him of the identity of that grantor with the John W. conveying to him.

**5.—Subrogation—Assumption of Debt.**

One who, in purchasing land, assumed the payment of an existing incumbrance thereon, was paying his own debt when he discharged it, and could not acquire, it seems, a right by subrogation to assert its priority to the liens of other incumbrancers.

**6.—Warranty—Incumbrance—Indemnity Bond.**

A purchaser of land with warranty of title received also a bond from the grantor and sureties to indemnify him against outstanding incumbrances. These being enforced against the land, and being for a sum greater than the amount of the indemnity bond, but less than the purchase price, the vendee was entitled both to judgment on the indemnity bond for its amount, and against the warrantor for the amount of the incumbrances, with provision for credit on either recovery for payment made on the other.

ON MOTION FOR REHEARING.

**7.—Subrogation—Pleading.**

One claiming subrogation to a lien by having, for his own protection, paid

the debt, which was that of another, must both plead and prove the facts. entitling him to such subrogation.

Appeal from the District Court of Denton County. Tried below before Ben L. Jones, Esq., Special Judge.

*Smith & Lattimore* and *J. T. Bottorff,* for appellant.—When land subject to liens has been sold in parcels without assumption or mention of liens—the right to have last-sold parcel sold first to satisfy lien—becomes fixed when all has been sold. If, thereafter, the original lienor by new purchase acquires any parcel of said land, he takes same with its attitude toward said lien already fixed, and his acquisition thereof does not affect such attitude. Miller v. Rogers, 49 Texas, 417; Lattimore v. Pooving, 69 S. W., 222; Burson v. Blackley, 67 Texas, 12; Van Sickle v. Watson, 103 Texas, 37.

If land subject to a lien be subdivided and sold in parcels without mention of lien, the purchasers of such first sold parcel have the right to encumber it as they please or to sell it and the holder of such incumbrance, or such purchaser, has the right to compel the sale of the last sold tract or tracts in the inverse order of alienation, to satisfy the original lien before his parcel can be touched. Hatton v. Bodan Co., 123 S. W., 163; Pomeroy Eq. Jur. P., 1226; Jones on Mortgages, 3722; and authorities above cited.

*Emory C. Smith,* for appellee Hicks.—A prior purchaser of a part of the mortgaged premises and his assignees may so deal with the common mortgagor in relation to the part purchased as to loose the superior equity attached thereto. When Burden, the first purchaser, conveyed the 67½-acre parcel to Francis, June 22, 1904, Francis had by such assignment a superior equity to Hicks, who purchased the remaining 100-acre parcel from Williams, the common mortgagor, August 27, 1904; but when Francis conveyed the 67½-acre parcel back to Williams, October 28, 1904, then Hicks occupied the equitable position of prior purchaser over Williams, and when Williams afterwards conveyed this tract to Shirley, and Shirley to Keith, and Keith to appellant, each of them had record notice that Hicks (McLaughlin) had purchased her 100 acres from Williams August 27, 1904, and neither appellant, nor his assignors under Williams had any greater equity than Williams possessed as to the 67½ acres at the time of and subsequent to his repurchase thereof; and as between Hicks, Williams and appellant, she is in law and equity the prior purchaser in the marshalling of sureties, securities and liens, and is entitled to have the 67½-acre tract first applied in payment of the Potter and Metz mortgage or vendor's lien debt. Watson v. Van Sickle, 114 S. W., 1160; Van Sickle v. Watson, 103 Texas, 37; Miller v. Rogers, 49 Texas, 417; Rippetoe v. Dwyer, 49 Texas, 504; Dwyer v. Rippetoe, 77 Texas, 534; Burson v. Blakely, 67 Texas, 12; 2 Washburn, Real Property, 4th ed., p. 207, sec. 6; 2 Story, Eq. Jur., sec. 1233-d; 3 Pomeroy, Eq. Jur., 1226; Jones on Mortgages, 722; Allen v. Clark, 17 Pick., 47.

WILLSON, CHIEF JUSTICE.—By a deed dated January 4, 1904, Eva Potter, Cora McKemie and Stella Rieves, joined by their respective husbands, conveyed a tract of 167.62 acres of land in Denton County to John Williams. The consideration for the conveyance was $1000 paid by Williams and the execution and delivery by him to the grantors of his nine promissory notes—one for $1000, payable to C. B. Potter; four for $272.75 each, payable to Will McKemie; and four for $316.50 each, payable to C. H. Rieves. By a stipulation in the deed a vendor's lien was expressly reserved by the grantors to secure the payment of each of the notes.

By a deed containing covenants of general warranty, dated January 3, 1904, and filed for record October 31, 1904, Williams, in consideration of $600 paid to him by S. B. Burden and the execution and delivery to him by Burden of his promissory note for $1425, conveyed to said Burden 67½ of the 167.62 acres. By another deed, containing like covenants, dated August 27, 1904, and filed for record October 28, 1904, Williams, in consideration of $1100 paid to him by appellee Mrs. M. S. Hicks, then Mrs. M. S. McLaughlin, and the assumption by her of the payment to the holders thereof of the four promissory notes for $316.50 each made by Williams in favor of Rieves, and the payment of two of the four notes for $272.75 each made by Williams in favor of McKemie, $120.50 on another of said $272.75 notes, and $154.55 interest accrued on said notes, conveyed to said Mrs. Hicks the remaining 100 acres of said tract. The notes Mrs. Hicks assumed to pay afterwards were paid by her. At the time Mrs. Hicks purchased the 100 acres she knew Williams had conveyed the 67½ acres to Burden.

Williams having failed on the maturity thereof to pay the note for $1000 made by him in favor of Potter, the latter, by his petition filed February 3, 1908, commenced his suit thereon, seeking as against Williams a judgment for the amount due thereon, and as against Williams, Mrs. Hicks and her husband, and appellant Hawkins, then the owner of the 67½ acres, a foreclosure on the 167.62 acres tract of the vendor's lien retained to secure the payment thereof. Williams having also made default in the payment of one of the $272.75 notes and of a part of another of same, and Mrs. C. Metz, the holder thereof, having pending in the same court against the same parties a suit thereon seeking like relief, the two suits were consolidated and then tried as one by the court without a jury.

On the trial the right of the holder of the notes to recover as against Williams the sums claimed to be due thereon, and to a foreclosure of the vendor's lien retained on the 167.62 acres to secure same was not questioned. The principal controversy was between Mrs. Hicks as the owner of the 100 acres, and Hawkins as the owner of the 67½ acres—each of them contending that the part of the 167.62 acres owned by the other should be first sold to satisfy the judgment to be rendered in favor of the holders of the notes. The court determined the contention in favor of Mrs. Hicks, and in his judgment directed that the 67½ acres be first sold

and if the proceeds arising from the sale thereof were sufficient to satisfy the judgment, that the 100 acres should stand discharged of the lien reserved to secure the notes sued upon.

Were the facts so far stated the only ones appearing in the record it would be clear that the 100 acres owned by Mrs. Hicks should be held to be liable to be first sold in satisfaction of the debt, and that the trial court erred in directing the 67½ acres owned by Hawkins to be first sold. For it is well settled that, under circumstances like these stated, "when lands subject to an incumbrance are sold to different purchasers, in different parcels and at different times, as between the several grantees the lands are chargeable in equity in the inverse order of their alienation." 19 A. & E. Ency. Law, 2d ed., p. 1273; 2 Jones on Mort., sec. 1620 et seq.; Miller v. Rogers, 49 Texas, 417; Rippetoe v. Dwyer, 49 Texas, 505; Van Sickle v. Watson, 103 Texas, 37, 123 S. W., 114. But it was shown further that Burden, to whom the 67½ acres were conveyed, by a deed dated June 24, 1904, conveyed same to Francis, who by a deed dated October 27, 1904, conveyed same to said Williams, who thereby again became the owner of said 67½ acres; and that afterwards Williams, by a deed dated February 28, 1907, conveyed said 67½ acres to Shirley, who conveyed same to Keith, who conveyed same to appellant Hawkins. While in effect conceding that her 100 acres primarily was liable for the payment of the notes sued upon, so long as the 67½ acres were owned by Burden and later by Francis, Mrs. Hicks insists that when said 67½ acres became again the property of Williams, same became and while thereafterwards owned by him continued to be primarily liable for the payment of such indebtedness; that when he again sold it the purchaser (Shirley) took it with notice of Williams' prior deed of record conveying to her the 100 acres; and that, under the rule stated, the 67½ acres in the hands of Hawkins, claiming under Shirley, who purchased from Williams after the latter had sold the 100 acres to Mrs. Hicks, was liable to be first sold in satisfaction of the notes. Had a foreclosure of the vendor's lien asserted by Potter and Mrs. Metz on the 167.62 acres tract been had during the time Williams owned the 67½ acres under his deed from Francis, clearly, we think, the judgment effecting such foreclosure should have directed the 67½ acres so owned to be first sold and the proceeds of the sale applied to the satisfaction of the indebtedness, and the 100 acres to be sold only in the event such proceeds were not sufficient to satisfy such indebtedness. For, while Mrs. Hicks took the 100 acres conveyed to her subject to the lien retained on the entire tract to secure the payment of the notes, she did not assume to pay them. The debt evidenced by the notes was Williams' debt, and not Mrs. Hicks'. Certainly while Williams owned a part of the 167.62 acres tract incumbered with a lien to secure the payment of his debt, he should not have been heard to say that another part of the tract, sold by him with a warranty by him to the purchaser against incumbrances, should be sold in satisfaction of his debt before the part owned by him should be sold for such a

purpose. Appellant seems to concede that as between Mrs. Hicks and Williams, while the latter so owned the 67½ acres, Mrs. Hicks would have been entitled to have had the 67½ acres first sold, but he insists that she would have been so entitled only by reason of the warranty in her deed, and only after she had by proper pleading set up a breach by Williams of the warranty and his then ownership of the 67½ acres. We do not think the insistence should be sustained. The rule that entitles a purchaser from the owner of a part of a tract of land incumbered by a lien to secure the owner's debt, to require that the part still owned by his grantor shall be sold and the proceeds thereof applied towards the payment of the debt before the part purchased by him shall be sold, is not referable to covenants warranting the title, but to principles of equity. "It rests chiefly, perhaps," said the Supreme Court of Michigan, in Cooper v. Bigly, 13 Mich., 474, "upon the grounds that where one who is bound to pay a mortgage confers upon others rights in any portion of the property, retaining other portions himself, it is unjust that they should be deprived of their rights, so long as he has property covered by the mortgage, out of which the debt can be made. In other words, his debts should be paid out of his own estate, instead of being charged on the estates of his grantees. Any other rule would be, in effect, to enable him to enjoy for his own benefit that which he has once vested in another, and in a measure to recall his own grant." "The rule can not, therefore," the court added, "depend upon the existence or non-existence of covenants of warranty." Murray v. Fox, 104 N. Y., 392; 2 Jones on Mort., sec. 1620. The reason of the rule, it seems to us, would have applied as strongly in favor of Mrs. Hicks had the foreclosure suit been brought while Williams owned the 67½ acres under his deed from Francis, as it would have applied in favor of Burden had the suit been brought before the sale by Williams of 100 acres to Mrs. Hicks. The fact that Williams in the one case had never parted with the title in him to a part of the land, while in the other he had reacquired the title to a part thereof which he had before parted with, we think would be of no importance. It would not have been less unjust in the one case than in the other to have refused to subject in Williams' hands the part of the tract owned by him to the payment of his debt constituting a charge thereon, before resorting for the satisfaction of such debt to the part of the tract owned by his grantee. If this is true, and we think it clearly is, then it would seem that appellant Hawkins has no right to complain of the judgment, in so far as it directed that the 67½ acres should be first sold in satisfaction thereof; for he, and Keith and Shirley under whom he claimed, acquired from Williams their title to the 67½ acres long after the date when Williams' deed to Mrs. Hicks was placed of record. 19 A. & E. Ency. Law, 2d ed., 1282. Appellant insists, however, that the record of the deed to Mrs. Hicks was not notice to him that she was claiming a part of the tract under a common grantor, because the deed to her was from J. W. Williams, whereas he claimed the 67½ acres under a deed to Shirley from *John* Williams. But he was charge-

able with knowledge of everything disclosed by the deeds forming his chain of title. The deed to Burden was one of the links in his chain. It was from J. W. Williams. On the identity of *John* Williams, to whom the 167.62 acres were conveyed, with J. W. Williams, who conveyed the 67½ acres to Burden, depended, therefore, the title appellant asserted. Claiming himself under a deed from J. W. Williams as identical with *John* Williams, we think he is not in a position to assert that because of ignorance on his part of the identity of John Williams with J. W. Williams who had conveyed the 100 acres to Mrs. Hicks, he was not chargeable with notice of such conveyance.

Appellant further insists, should it be held, as it is, that the facts so far stated do not show the judgment in the particulars referred to to be erroneous, that it is erroneous because it further appears from the record that Francis, as a part of the consideration for the conveyance to him by Burden of the 67½ acres, undertook to pay a note for $1425 Burden had made to Williams as a part of the purchase price of the 67½ acres when he bought same of Williams, and that he (Francis) had made to Burden as a part of the consideration for such conveyance to himself his note for $250.55; that Williams when he reacquired the ownership of the 67½ acres assumed the payment of both said $1425 and $250.55 notes; and that Shirley, who afterwards purchased the 67½ acres from Williams assumed to pay and did pay to the holder thereof, the Sanger National Bank, the amount due on both said notes. The contention made by appellant on this state of facts, seems to be that the holder of said $1425 and $250.55 notes had a right superior to that of the holders of the notes sued upon to have same satisfied out of the proceeds of any sale made of the 67½ acres; and that Shirley, having paid said $1425 and $250.55 notes, and appellant Hawkins, claiming under him, became subrogated to such right of the holder thereof. Conceding that on the facts appearing in the record, the bank as the holder of said $1425 and $250.55 notes had such a superior right, we do not think either Shirley or his grantees can claim anything on account of it. For, it seems, that as a part of the consideration for the conveyance to him of the 67½ acres, Shirley assumed the payment of said $1425 and $250.55 notes. So when he paid the notes, he paid his own debt. Therefore, we are unable to understand how the doctrine of subrogation can be invoked by him or by any one in his right.

We are of the opinion that the judgment in so far as it determined the controversy between the plaintiffs in the court below and the other parties, and in so far as it determined the controversy between Mrs. Hicks and appellant as to the equities asserted by them against each other, is not erroneous.

The deeds from Shirley to Keith and from Keith to appellant contained covenants of general warranty. As recited in the respective deeds the consideration paid by Keith to Shirley was $4050, and the consideration paid by appellant to Keith was $3350. To indemnify appellant against the incumbrance on the 67½ acres represented by the notes sued

upon, Keith, Shirley and one J. B. Haynie and E. L. Long executed to him their bond in the sum of $1500. In his pleading appellant set up the warranties and the bond, and sought a recovery on both. The court rendered a judgment in his favor on the bond against the makers thereof, but refused to render a judgment in his favor against Shirley and Keith on their warranties. On the record as it is presented to us, we think a judgment in appellant's favor on the warranties should have been rendered. The recovery in favor of Potter was for the sum of $1292.80 and interest at the rate of eight per cent per annum, and the recovery in favor of Mrs. Metz was for the sum of $549.50 and interest at the rate of eight per cent per annum. The aggregate of the two sums so recovered is much less than the sum received by Keith of appellant, and much less than the sum received by Shirley of Keith. The judgment in appellant's favor on the warranties therefore should have been for the sums adjudged in favor of Potter and Mrs. Metz respectively. It will be so reformed as to so adjudge, and to provide that any payment made on account of the sums adjudged on the warranties shall operate as a payment *pro tanto* of the amount adjudged on the bond, and vice versa. As so reformed the judgment rendered by the court below will be affirmed.

### ON MOTION FOR REHEARING.

Questioning the correctness of the conclusion reached by us that, had a foreclosure of the vendor's lien asserted by Potter and Mrs. Metz on the 167.62 acres tract been had during the time Williams owned the 67½ acres under his deed from Francis, the judgment effecting such foreclosure should have directed the 67½ acres to be first sold to satisfy it, appellant argues that the warranty in the deed from Williams to Burden "was," quoting the language of the motion, "an absolute lifting of the lien from the 67½ acres and placing it on the 100 acres"; that Mrs. Hicks purchased the 100 acres knowing same had been so charged, while in Williams' hands, with the entire debt; that as between Burden, the first purchaser of a part, and Mrs. Hicks, the purchaser subsequently of the remainder of the tract, the equities arising from the order of their respective purchases had become irrevocably fixed; and that, therefore, the fact that Williams, at a time when his indebtedness evidenced by the vendor lien notes remained unpaid, again became the owner of the 67½ acres, should not be held in any way to have affected those equities. The argument, it seems to us, ignores the reason existing for the rule that requires, where real estate bound by a lien has been alienated in separate parcels to various persons at different times, the parcels to be sold, when the lien is to be satisfied, in the inverse order of their alienation; and also ignores the fact that the rule, being a doctrine of equity, is not an absolute one, but will yield to the circumstances of a particular case and will not be applied where its operation would produce an inequitable result. To have required the 100 acres owned by Mrs. Hicks to be first sold for the purpose of satisfying Williams' debt, at a time when he owned the 67½ acres, would have been to ignore

entirely the reason for the rule and to use it to accomplish the contrary of that which it was intended to accomplish. For surely it would have been inequitable, as between Mrs. Hicks and Williams, to have required property he had conveyed to her with warranty of title to be sold to pay his debt, before selling property belonging to him and charged with the payment of the same debt. If Williams, while owner of the 67½ acres under his deed from Francis, did not have a right, on a foreclosure of the Potter and Metz lien, to have the 100 acres purchased of him by Mrs. Hicks first sold, then certainly appellant as the purchaser of the title reacquired by Williams to the 67½ acres, did not have such a right. As such a purchaser he could have no greater right than Williams had.

It is further insisted in the motion that we were in error in holding that Shirley, and appellant as his grantee, did not, by the payment of the note for $1425 given by Burden to Williams and the payment of the note for $250.55 given by Francis to Burden, become subrogated to the rights of the Sanger National Bank, the holder thereof, and attention is called to the fact that the statement in the opinion that Shirley had assumed the payment of those notes is without support in the record. The erroneous statement in the opinion was due to the fact that the writer misread the record. Francis assumed the payment of the $1425 note when he purchased from Burden, and Williams assumed the payment thereof and of the $250.55 note when he purchased from Francis. But Shirley, when he purchased of Williams, did not asssume the payment of said notes. However, on another ground than the one mentioned in the opinion, and without reference to the contention made by appellant as to his right to be subrogated to equities of the bank as the holder of the $1425 and $250.55 notes, we must hold that the conclusion reached as to the disposition to be made of the appeal was a correct one. By his pleadings appellant asserted that he was entitled, as the owner of the 67½ acres, to have the decree to be entered foreclosing the Potter and Metz lien to provide for the sale first of the 100 acres belonging to Mrs. Hicks. but nowhere in his pleadings did he set up any right to relief on account of the fact that he had paid to the bank as the holder thereof the amounts due it on the $1425 and $250.55 notes. He could not be subrogated to the rights of the bank as the holder of the notes, without pleading and proving facts entitling him to such subrogation. Crebbin v. Moseley, 74 S. W., 816; Silberborg v. Trilling, 82 Texas, 525.

The motion is overruled.

*Reformed and affirmed.*

Writ of error refused.