## CONTINENTAL OIL CO. OF TEXAS et al. v. GRAHAM.  (No. 11981.)

Court of Civil Appeals of Texas. Fort Worth. June 2, 1928.

1. Mines and minerals ⚖73—Oil lease in usual form conveys interest in lands.

Oil and gas lease in usual form conveys interest in lands in state of Texas.

2. Mortgages ⚖513—Portion of mortgaged premises retained by mortgagor must be first sold; remaining portions, not conveyed subject to mortgage, being sold in inverse order of alienation, if sum realized from first sale is insufficient.

Where mortgagor, after execution of mortgage, has transferred separate parcels of mortgaged property to different persons, who do not assume or take subject to the mortgage, portion of property still remaining in hands of mortgagor must first be sold to satisfy mortgage debt and costs of foreclosure, with sale of the por-

---

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tions conveyed in inverse order of their alienation in case sale of property retained by mortgagor brings amount insufficient to satisfy mortgage debt.

**3. Evidence ⚖➞97—Litigant has burden to bring himself within exception to law, judgment, or contract.**

As a general rule, litigant seeking the benefit of an exception to a law, judgment, or contract, has burden of proving himself within the exception.

**4. Mortgages ⚖➞513—Mortgagee in foreclosure suit had burden to establish hardship from requiring separate sale of surface rights retained by mortgagor.**

Where mortgagor, after executing mortgage, gave oil leases on property, without assumption by lessees of mortgage or taking subject thereto, mortgagee in foreclosure suit had burden to establish that hardship or difficulties would result from selling surface property retained by mortgagor before sale of rights of lessees under the oil lease.

**5. Mortgages ⚖➞513—Mortgagee on foreclosing could in first instance sell only surface rights retained by mortgagor with right to subsequent sale of lessee's mineral rights, not conveyed subject to mortgage, if sum first realized was insufficient.**

Where mortgagor, after executing mortgage, conveyed mineral rights in property under usual form of oil and gas lease, without assumption by lessee of mortgage or taking subject thereto, mortgagee on foreclosure was not entitled to sell entire mortgaged property in one parcel, but was required first to sell surface rights with right to proceed to sale of mineral rights of lessee and assignees of lessee in case sum derived from sale of surface rights should be insufficient to pay mortgage debt and costs; it not appearing that mortgagee would thus suffer hardship.

Buck, J., dissenting.

Appeal from District Court, Cooke County; Alvin C. Owsley, Judge.

Suit by Chas. Graham against the Continental Oil Company of Texas, T. L. Gaston, Imo C. Gaston, his wife, and others. Judgment for plaintiff, and defendants, except defendants Gaston, appeal. Reversed and rendered.

Benson & Benson, of Bowie, and Bonner, Bonner & Fryer, of Wichita Falls (Wm. N. Bonner, of Wichita Falls, of counsel), for appellants.

Garnett & Garnett, of Gainesville, for appellee.

CONNER, C. J. This suit was instituted by Chas. Graham in the district court of Cooke county on July 29, 1927, against T. L. Gaston and wife, Imo C. Gaston, and the Continental Oil Company, the Shasta Oil Company and the Almore Oil Company. The plaintiff Graham alleged, and the undisputed facts show, that T. L. Gaston and wife, on the 1st day of January, 1926, exe-

cuted their promissory note, payable to the plaintiff on November 1, 1926, in the sum of $4,000, which, together with the interest and attorney's fees as therein provided, aggregated, at the date of the trial, $4,881.03. The plaintiff further alleged, and the undisputed facts show, that on the 7th day of January, 1926, Gaston and wife executed in due form a trust deed to secure the note declared upon. The trust deed covered 288 acres of land situated in Cooke county, described in the petition, and was duly recorded. Plaintiff's plea was for a personal judgment against the defendant Gaston and for a foreclosure of the deed of trust lien against each and all of the defendants.

The defendant Shasta Oil Company, in its own behalf and in behalf of the two other oil companies, answered and alleged, and the undisputed facts so show, that on September 2, 1926, T. L. Gaston and Imo Gaston executed and delivered to the Shasta Oil Company an oil and gas lease covering the 288 acres of land described in plaintiff's trust deed. Later, to wit, on and after October 8, 1926, the Shasta Oil Company executed and delivered to the defendants Continental Oil Company and the Almore Oil Company leases or assignments to separate portions, aggregating 125 acres out of the original 288 acres covered by the trust deed. The prayer of defendant oil companies was that the surface rights to the land covered by the trust deed be first sold and the proceeds applied to the payment of plaintiff's debt, and that, if such proceeds were not sufficient therefor, that then the leasehold estates of the defendants be sold, etc. The defendant Gaston and wife were duly cited, but failed to answer.

The trial was before the court without a jury and resulted in a judgment in favor of the plaintiff against defendant T. L. Gaston for the sum of $4,881.03, principal, interest, and attorney's fees, with a foreclosure of plaintiff's trust deed as against all defendants upon the entire tract of 288 acres, directing its sale and the application of the proceeds to the discharge of the plaintiff's judgment, costs, etc. To the judgment so rendered, the defendant oil companies have prosecuted this appeal, Gaston and wife not complaining.

The counsel of the several parties have, with very commendable art, greatly simplified the material question presented for our determination. Omitting details not thought to be of any controlling effect, we think it sufficient to state that the oil lease executed by Gaston and wife to the defendant Shasta Oil Company is in a familiar form and was at and prior to the date of the trial in full force and effect. The subsequent leases of the Shasta Oil Company to the Continental and Almore Oil Company were likewise in

the usual form of such assignments or subleases, coupled with the guaranty, however, of title by the Shasta Oil Company.

The trial court's conclusions of fact, in so far as material, include the facts as we have stated them, and, in addition thereto, finds in favor of an answering plea of plaintiff that the defendant oil companies failed to show the value of the 288 tract of land, either with or without mineral rights, and that:

"To divide and subdivide said mineral rights, if any, and to divide and subdivide the royalties, if any, and to divide and subdivide said land and the supposed minerals thereunder, and thus·sell them separately under plaintiff's foreclosure, that the plaintiff would be delayed and inconvenienced in the collection of his debt, and this would complicate matters and embarrass plaintiff in the foreclosure of his said lien and the sale of said land, and would cause plaintiff·to suffer confusion, injustice, and prejudice in the collection of his debt. I find that defendant oil companies have failed to pay off plaintiff's debt and lien and be subrogated by the only method provided."

[1] We think it must now be conceded that an oil and gas lease in the usual form in this state conveys an interest in lands. See State ex rel. Attorney General v. Hatcher, 115 Tex. 332, 281 S. W. 192; Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779; Stephens Co. v. Mid-Kansas Oil Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.

[2] Another rule equally as well settled by the great weight of authority is thus stated in 1 Wiltsie on Mortgages (4th Ed.) p. 886:

"If a mortgagor subsequent to the execution of the mortgage has made one or more transfers of separate parcels of the mortgaged premises to different persons, not expressly assuming or taking subject to the mortgage, that portion, if any, still remaining in his hands, must, on foreclosure, be first sold to satisfy the mortgage debt and the costs and expenses of the action, and if a sufficient sum for that purpose is not realized from such sale, then the various portions of the mortgaged lands conveyed by the mortgagor must be sold in the inverse order of their alienation, subject to the equitable rights of the·different grantees as among themselves, until a sufficient sum is realized to satisfy the mortgage debt.

"The ·rule for sale in inverse order of alienation applied where there is a subsequent lease on the premises or a subsequent grant of a right of way.

"The rule has been adopted throughout the states of the Union, and now prevails in New York, Alabama, California, Colorado, Florida, Illinois, Indiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, Ohio, Oklahoma, Pennsylvania, South Carolina, Texas, Vermont, Virginia, Washington, and Wisconsin. The same rule also prevails in England. But a different rule obtains in Iowa, Kentucky, and Georgia."

The Texas cases ·cited by the author in support of the text are Rippetoe v. Dwyer,

49 Tex. 498: Miller v. Rogers, 49 Tex. 398; First State Bank v. Cox (Tex. Civ. App.) 139 S. W. 1; Watson v. Vansickle (Tex. Civ. App.) 114 S. W. 1160; Hawkins v. Potter, 62 Tex. Civ. App. 126, 130 S. W. 643. In Hawkins v. Potter, supra, writ of error denied, in discussing the rule that, where lands subject to an incumbrance have been sold to different persons 'in different parcels at different times, the lands subject to the incumbrance are, as between the grantees, chargeable in equity in the reverse order of alienation, it was said:

"It rests chiefly, perhaps, * * * upon the ground that where one who is bound to pay a mortgage confers upon others rights in any portion of the property, retaining other portions himself, it is unjust that they should be deprived of their rights, so long as he has property covered by the mortgage, out of which the debt can be made. In other words, his debt should be paid out of his own estate, instead of being charged on the estates of his grantees. Any other rule would be, in effect, to enable him to enjoy for his own benefit that which he has once vested in another, and in a measure to recall his own grant."

In reference to the rule, Judge Simkins, in Simkins on Equity, p. 145, had this to say:

"In the event of the foreclosure•of the general mortgage, a court will order the land sold in inverse order of alienation." National Sav. Bank v. Creswell, 100 U. S. 643, 25 L. Ed. 713; Hawkins v. Potter, 62 Tex. Civ. App. 126, 130 S. W. 643; Vansickle v. Watson, 103 Tex. 37, 123 S. W. 114; Elmendorf v. Beirne, 4 Tex. Civ. App. 188, 23 S. W. 315.

See, also, Jones on Mortgages (7th Ed.) §§ 1620, 1621, where it is said that the rule has been generally adopted and satisfactorily established by statute or by decisions of the state courts and has become a rule of property in the courts of the United States setting in any state in which the rule is established.

It is said that the rule is one of equity and will not be applied in any cases where its application would work injury. Counsel for appellant in their written argument quote from the Eighth Edition of Jones on Mortgages, vol. 3, p. 557, and from Wiltsie on Mortgages, vol. 4, p. 701 (neither publication being available to us), which give the exceptions noted by the cited cases to the general rule, as where the mortgage does not rest alike upon the whole of the lands, where the purchaser has assumed payment of the entire mortgage deed, and where the conveyance is expressly made subject to the mortgage; nor will it apply to the sale of the equity of redemption upon execution for a debt other than that secured by the mortgage, nor does the rule of inverse order apply where tenants in common jointly mortgage the joint property for a joint debt and one of them subsequently sells and conveys

his entire interest to another person subject to the incumbrance. None of the exceptions so referred to appear in the case before us. The simple facts are, as we have endeavored to make them appear, that after the execution of the note and trust deed lien upon which the plaintiff declared, the makers of the note and trust deed executed and delivered to the Shasta Oil Company an oil lease in the usual form covering the entire tract of land upon which the trust deed rested, and that later the Shasta Oil Company conveyed designated parcels to the Continental and Almore Oil Companies.

The validity and legal effect of neither of the instruments referred to is questioned, and there is no evidence whatever found in the approved statement of facts before us which shows or tends to show the value of the 288 acres of land, or that, if first sold as required in sales under execution, the surface rights will not bring an amount sufficient to full discharge appellee's debt, interest, and costs of suit. It is true, as is asserted in behalf of appellee, that the lien or trust deed is superior to any right shown to be in the appellant oil companies. The surface rights to the land will appeal to a class of purchasers having no desire to invest in rights under an oil lease, while rights conferred by an oil lease will ordinarily appeal more particularly to those engaged in the oil business, and in developing producing wells. So that it cannot be said as a matter of law that a sale as sought by the appellant companies in the inverse order of the original alienation by Gaston and wife will result in any difficulties or hardship to the appellee, Graham. If upon sale the surface rights subject to the oil leases in question shall not bring a sufficient amount to discharge appellee's debt, interest, and costs, the officer selling can further proceed and sell all rights held by appellants under their lease.

[3, 4] Appellee pleaded, in substance, in answer to appellant's pleas of sale in inverse order of alienation as an excuse that to so sell would involve him in difficulties. The general rule is that a litigant seeking the benefit of an exception to a law, judgment, or contract, has the burden of bringing himself within the exception, and in accordance therewith, we think the burden was upon appellee to establish the hardship, difficulties, or uncertainties, if any, that would bring his case within a legal exception to the general rule. While the court in his findings sustained the exception appellee invoked, the finding is altogether without legal evidence, as we think, to support it.

We should perhaps notice the case of Reed v. Tom, 2 S.W.(2d) 909, by the El Paso Court of Civil Appeals. Judge Higgins, who wrote the opinion, in discussing the rule under consideration, said that:

So far as that court was advised, "the rule has never been applied to an oil and gas mineral interest in mortgaged land conveyed subsequent to the execution of the mortgage. Obviously a mineral interest is worthless unless the owner thereof have also the surface rights necessary to the enjoyment of such interest. We are of the opinion that an oil and gas mineral interest is so inseparably connected with the surface rights that the rule noted has no application."

But as it appears to us the case of Reed v. Tom is distinguishable from the one here. The opinion recites that the court had before it no statement of facts, and, while the opinion is not very full in its statement of the facts as shown by the record in the case, it does appear therefrom that one J. A. Murphy was the owner of the land involved in that case; that Murphy sold the land to one Standifer, taking Standifer's note, retaining the vendor's lien for the purchase money, which note was by Standifer, assigned to the plaintiff Tom. The defendants claiming under the oil lease in that case deraigned from Standifer, Murphy's vendee, and not from Murphy, the original owner of the land. Murphy, in reserving the vendor's lien, retained the legal title under a well-settled line of authorities in this state, an assignable interest, while Standifer, under the same line of cases, only had an equitable interest that would not ripen into full title until the payment of the purchase money.

In the case before us the defendants claiming oil leases deraigned title from T. L. Gaston, the original owner of the land and possessor of the legal title at the time the oil lease to the Shasta Oil Company was executed. We can well understand that a prior lien holder might be prejudiced by applying the rule under consideration in favor of mere subvendee. To illustrate, let us suppose A, an owner of land, sells to B, retaining the vendor's lien and legal title, and that B divides the land into numerous blocks and lots, forming a city addition, and thereafter, from time to time, separately sells the lots until all are sold. Apparently, at least, to apply the rule of selling each lot in the inverse order of its alienation would probably occasion delays, multiplied expenses, and costs to the prejudice of A in seeking to enforce his lien by a foreclosure sale. Such in principal would seem to be the El Paso decision, and, as applied to the particular facts of that case, we are not disposed to disagree with the quoted view in the opinion by Judge Higgins. However, we are not called upon to determine the question of whether the rule invoked by appellants applies to the Continental and Almore Oil Companies, subvendees of the Shasta Oil Company, for on the submission of this case, counsel for the defendant oil companies stated in open court that said companies had pooled their interest and would settle their

equities among themselves. The Shasta Oil Company, however, falls well within the rule invoked in its behalf. In 3 Jones on Mortgages (7th Ed.) § 1621, the author, in speaking of the rule under consideration, among other things, says that:

"Any one having a substantial and valuable interest in any of the parcels may demand the enforcement of his equity."

To the same effect is the case of Mack v. Shafer, 135 Cal. 113, 67 P. 40, it being there stated that the rule has been applied in favor of a wife's dowery or homestead right or judgment creditor, etc.

[5] For the reasons stated, we think the judgment below must be reversed and here rendered in favor of appellee, Chas. Graham, against T. L. Gaston upon the promissory note declared upon for the sum of $4,881.03, together with interest thereon from the date of the judgment below at the rate specified in the note and all costs of suit in the trial court, with a foreclosure of his lien upon the whole of 288 acres of land described in his petition against all defendants, including appellants herein, for which execution or order of sale may issue in favor of appellee, directed to the proper officers, commanding the sale of said land, first, the surface rights thereto subject to the terms of the oil lease owned by the Shasta Oil Company, and, if from such a sale a sufficient sum shall not be derived to fully pay off and discharge the judgment in plaintiff's favor, then, and in that event, said officers shall further proceed to sell all rights of whatever character, acquired by the appellant oil company under their several oil and gas leases, the surplus, if any, to be paid to the appellant Shasta Oil company; the costs of the appeal to be taxed against appellee.

BUCK, J., dissenting.