## ARAB PETROLEUM CORPORATION v. MAURER.

### No. 10264.

Court of Civil Appeals of Texas. San Antonio.

March 16, 1938.

Rehearing Denied April 27, 1938.

J. Arthur Sandlin, of San Antonio, for appellant.

C. C. Wurzbach, J. L. Camp, and Robt. G. Harris, all of San Antonio, for appellee.

SMITH, Chief Justice.

On April 9, 1927, Jesus Leal and wife, by general warranty deed, conveyed a tract of 430 acres of land, owned by them and situated in Wilson county, to Carlota Miller de Gonzalez, for a consideration of $6,000, $2,500 in cash and the balance, $3,500, in two promissory notes, payable five years from date. The vendor's lien was reserved in the deed and notes.

On July 25, 1932, the said Carlota de Gonzalez conveyed the land by general warranty deed to B. H. Drumheller, in consideration of a "1930 Lincoln Sport Phaeton automobile" and Drumheller's assumption of the outstanding vendor's lien notes for $3,500. On the same day Drumheller conveyed the land, by general warranty deed, to R. F. Garland, subject to said outstanding vendor's lien notes and lien.

Thereafter, on January 1, 1934, Garland, the then owner of the land, conveyed, by deed, to Arab Petroleum Corporation, for a recited consideration of "$10 and other valuable considerations" then paid, an undivided one-half of all the oil, gas, and minerals in and under said 430-acre tract of land, together with all the rights of ingress, egress, and all other operations incident to the exploration, development, production, and disposition of said mineral products from such land, as well as the right to free said land of liens, taxes, and judgments and be subrogated to the rights of the holders of such liens, etc.

On January 2, 1934, the day after executing said mineral deed to Arab Petroleum Corporation, Garland, the owner, conveyed said 430-acre tract of land to Sarah A. Price, for a recited consideration of $10 cash and the assumption by the grantee of said outstanding note and lien for $3,500.

Thereafter, on October 20, 1934, the then owner and holder of said vendor's lien notes and lien transferred the same, with all the rights incident thereto, to George Maurer, and two years later, on October 22, 1936, Sarah A. Price, then owner, conveyed said 430-acre tract of land to Joe Maurer, for the then popular consideration of $10 cash and the assumption by the grantee of the balance due on said outstanding $3,500 notes and lien.

By this somewhat sinuous course, George Maurer became the owner of the vendor's lien note and lien, Joe Maurer the owner of the land and obligor upon said vendor's lien note and lien, and Arab Petroleum Corporation the owner of an undivided one-half of the minerals under the said land, together with all the surface rights incident to the ownership of said minerals.

In this situation, and in default on the balance due on the purchase price of the land, George Maurer, then owner of the vendor's lien notes and lien, brought this action against Joe Maurer, upon his assumption, for the amount of the balance due on the notes, and to foreclose the vendor's lien on the land; and also against Arab Petroleum Corporation, as claiming some interest in the land, and against whom, also, foreclosure was prayed.

It appears that the unpaid balance due on said two notes was $600 and $718.88, respectively, and the plaintiff below, George Maurer, prayed for that amount, with interest and attorney's fees. The trial judge found the aggregate amount of the notes, with interest and attorney's fees, to be $1,682.89, for which amount he rendered judgment in favor of George Maurer, against the said Joe Maurer, together with foreclosure against the latter and Arab Petroleum Company. The latter has appealed.

Appellant contends here, as it strenuously urged below, that in the sale of the minerals in land covered by an existing lien to secure a debt not assumed by the purchaser of the minerals, such purchaser acquired the equity of marshaling as to the interest remaining in his vendor or subsequent vendees who assumed such indebtedness. That is to say, appellant contends that when his grantor sold him a part of the minerals, and retained and afterwards alienated the surface and the remaining part of the minerals, appellant acquired the right, in event of foreclosure of the outstanding lien, to have the surface and remaining mineral interest first sold to satisfy the lien, and that resort could be had to his mineral interest only in the event the proceeds from the sale of the surface and remaining mineral interest were insufficient to extinguish the debt and satisfy the lien; that appellant's mineral interest should be regarded and treated, under the doctrine of marshaling securities, as if it were a separate parcel of land. The doctrine is a familiar one in this state. Under it the rule is that where land subject to a lien is divided by its owner, and sold in parcels to different persons at different times, the parcels are chargeable to pay the debt, and upon de-

mand of the grantees affected may be sold, at foreclosure, in the inverse order of their alienation.

The direct question seems to have arisen in only two cases in Texas. Reed v. Tom, Tex.Civ.App., 2 S.W.2d 909, 910; Continental Oil Co. v. Graham, Tex.Civ.App., 8 S. W.2d 719. In Reed v. Tom, the El Paso Court of Civil Appeals held that the doctrine of marshaling of securities was not available to the holder of the oil and gas lease involved in that case. The language of the opinion in that case, however, seems to be broad enough to apply, in its dictum, to any interest in oil and gas in place. The court said, in speaking of the doctrine in question: "But so far as we have been advised the rule has never been applied to an oil and gas mineral interest in mortgaged land conveyed subsequently to the execution of the mortgage. Obviously a mineral interest is worthless unless the owner thereof have also the surface rights necessary to the enjoyment of such interest. We are of the opinion that an oil and gas mineral interest is so inseparably connected with the surface rights that the rule noted has no application. Furthermore, the rule is not an arbitrary one, and is never applied when it would operate inequitably against the lienholder."

That pronouncement, when analyzed, seems to rest upon three assumptions, first, that a mineral interest is worthless unless it carries with it the surface rights necessary to the enjoyment of the interest; second, that such interest is so inseparably connected with the surface right that the doctrine in question has no application; and, third, that the rule, not being an arbitrary one, will not be applied when it would operate inequitably against the lienholder. It is appropriate to state, in this connection, that those reasons are not deemed applicable to this case, first, because here the conveyance of the mineral interest to appellant carried with it, by express provision, all the surface rights incident to the enjoyment of the mineral interest; second, there is nothing in the record to show that the application of the doctrine in this case would injure or even inconvenience the lienholder in the least particular. The procedure, under the rule, would be, simply, that the executing officer first sell the entire property, burdened with appellant's mineral interest, and if the price offered be in-

sufficient to pay off the debt and costs of sale, and thereby satisfy the lien, then sell appellant's mineral interest towards making up the deficiency. It is not conceivable that the lienholder would be inconvenienced, or his rights in the least impaired, by such procedure.

With reference to the third reason stated in Reed v. Tom, that the mineral interest is so inseparably connected with the surface right as to render the rule inapplicable, it seems necessary only to recall that the law provides for the separation of mineral from surface estates in land, and for the separate conveyance of those estates. A sheriff at a judicial sale may sell and convey such separate interests without restraint. For instance, if the owner of the land involved here had conveyed half the minerals therein to appellant before burdening the land with the lien established in this case, and the lien had been foreclosed, as was done, would not the sheriff have properly conveyed the land burdened with appellant's mineral interest? The answer is that the two estates are separate and distinct, and may be sold and conveyed separately by whomsoever has the power, according to the respective rights of all interested parties.

What we have said above was better said by Chief Justice Connor of the Fort Worth Court of Civil Appeals, in Continental Oil Company v. Graham, supra, although, for distinguishing reasons, that court declined to enforce the doctrine of marshalling securities as to the oil and gas lease in that case. The force of that court's reasoning, however, was not impaired by the decision of the case. Both that case, and Reed v. Tom, are distinguishable in various aspects, from this, so that a conflict in decision is not present.

There appears in the record no reason why the doctrine of marshalling should not be applicable in this case, but every reason why it should, and we therefore hold that the trial court erred in rejecting it.

The judgment will be reformed so as to provide that the land involved shall be first sold subject to appellant's one-half interest in the minerals in accordance with the conveyance thereof to him, and, in case of deficiency after such sale, that appellant's said interest be then sold, and the excess, if any, paid over to appellant.

As so reformed, the judgment will be affirmed.