# DECEMBER, 1909.

---

HENRY VANSICKLE, ADMINISTRATOR, v. J. W. WATSON ET AL.

No. 1983. Decided December 8, 1909.

**1.—Lien—Release—Notice—Recitals—Evidence.**

A vendee who had given a lien for the purchase money of land sold parts thereof to others and subsequently the balance to a third person, to whom the first vendor executed a release of his lien on the part so purchased, which release recited the fact of the previous sales by his vendee to the other part purchasers. Held that such recital in the release, uncontradicted and unexplained, was sufficient evidence of its maker's knowledge of such previous sales by his vendee and of what might prove to be the rights of the purchasers with reference to the effect of his release of the lien on the land not bought by them. (P. 43).

**2.—Incumbered Land—Sale of Part—Release of Lien.**

Where the owner of incumbered land divides it, selling off tracts to separate purchasers, the parts sold becoming thereby chargable with the incumbrance in the reverse order of their sale, a release of the lien by its holder as to a tract sold will operate as a release as to that of previous part purchasers, so far as necessary to their protection; if, not having completed payment, they do so after and with knowledge of the release, their right to such protection may be lost; but they are not deprived by such knowledge of the right to perform their contracts and acquire the land in accordance therewith; and where, by the terms of the sale to them, the purchase money notes, unpaid when the release was given, were payable to another than their vendor, they may pay them with the same effect as though payment had been made before the release. (Pp. 43, 44).

**3.—Same—Case Stated.**

A vendee of land who had given a note secured by lien for the purchase money, sold a part thereof upon a contract by which the purchaser gave notes for the price to a bank to which the seller was indebted, agreed to make certain improvements, which was done, and was to receive title on making same and paying the notes to the bank, which held them with the deed. Thereafter the remainder of the tract was sold to a third party to whom the first vendor executed a release of his lien for purchase money on such last sold tract, not releasing as to others. Held, that the purchaser of the first tract, could complete his contract after such release and with knowledge of it, and acquire title, without prejudice to his claim to a release of the lien against his land by its release as to the land primarily liable. (Pp. 39–45).

**4.—Same—Innocent Purchaser.**

The right of a bank, acquiring notes for a previous indebtedness, to enforce

the legal obligation of the makers, did not depend on its being an innocent purchaser for value. It was chargeable with notice of any defense the makers might have against their enforcement, but not with a purely equitable right of a third party to the enforcement of a lien of which the bank had no notice. (Pp. 44, 45).

#### 5.—Lien—Sale of Part of Incumbered Land—Payment.

The right of a purchaser of a part of an incumbered tract to have the lien enforced first against the part remaining in and subsequently sold to another by his vendor is not lost by his payment of the purchase money after notice of such subsequent sale, where such purchase money was, by the terms of his contract, payable, not to his vendor, but to a third party having the right to enforce payment against him irrespective of its effect on the liens. (Pp. 44–46).

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

Vansickle sued Watson and others for foreclosure, and appealed from a judgment of partial recovery. The Appellate Court reversed and rendered a judgment upon which both appellant and appellees applied for and obtained writs of error.

*Looney & Clark,* for plaintiff in error, Henry Vansickle.—The evidence does not, as a matter of law, charge Vansickle with notice that White and Watson owned any interest in the land at the time the release was executed, especially any such interest as would be affected by such release. Moran v. Wheeler, 87 Texas, 179; Rogers v. Houston, 94 Texas, 403; 19 Am. & Eng. Ency. Law (2d ed.), pp. 1266 to 1283; 32 N. J Eq., 240.

Where the owner of a tract of land upon which there is an incumbrance sells a part of it to one who gives notes for the purchase money and, before these notes are delivered, sells the remainder of the land to another person, who pays the purchase money in full, and neither purchaser assumes any part of the prior incumbrance, the equitable rule that the tracts sold are liable in the "inverse order of alienation" is reversed, and the tract first sold becomes primarily liable to the extent of the unpaid purchase money notes. 19 Am. & Eng. Ency. Law (2d ed.), pp. 1281 and 1282; Bedlow v. Dewitt, 43 Pa. St., 326; Sternberger v. Hanna, 42 Ohio St., 305; Watson v. Neal, 38 S. C., 90; Allen v. Clark, 17 Pick. (Mass.), 47; Niles v. Harmon, 80 Ill., 396; Cogswell v. Stout, 32 N. J. Eq., 240.

The evidence showing that, at the time the release was executed and at the time Davidson bought, the contracts of White and Watson were not only executory, but the sale conditioned upon their making certain improvements within a specified time, and providing for a forfeiture of the notes in case they failed to comply therewith, as between Vansickle and these appellants, the case, as made, is governed by the ordinary rule. The release being executed before White and Watson acquired, or paid for, their land and the Davidson tract being first conveyed and paid for, the White and Watson tracts were primarily liable for the Vansickle debt. Hall v. Jackson, 3 Texas, 305; Salinas v. Wright, 11 Texas, 572; Gammage v. Alexander, 14 Texas, 414; Edrington v. Newland, 57 Texas, 627; Western U. Tel. Co. v. Smith, 88 Texas, 13; Krohn v. Heyn, 77 Texas, 319; Hamilton v. Cushman, 15 Texas Civ. App., 338; Wisby v. Boyce, 27 S.

W., 590; Hurd v. Brewing Co., 21 Texas Civ. App., 296; Lewis v. Hatton, 86 Texas, 536.

Knowing that Davidson's rights had intervened, and being charged with notice of the existence of the prior lien, their rights and duty were plain. The law charged the land they had contracts to buy with a lien for all damages they had sustained, and they could either refuse to carry out the contracts and enforce this lien, stand on their contracts and refuse to surrender their notes into Vesey's hands until he cleared their title from Vansickle's lien, or look to Vesey's warranty for protection against the prior claim. Having voluntarily surrendered to him their negotiable notes, they can not, now, in a court of equity, insist that any one else should bear the loss if these notes went into innocent hands. Same authorities as under first proposition; Elder v. Bank, 43 S. W., 19; 29 Am. & Eng. Ency. Law (2d ed.), pp. 617 to 621 and 730; Galbraith v. Reeves, 82 Texas, 357; Sharp v. Baker, 22 Texas, 316.

The bank knew the state of the title to the land, against which the White and Watson notes were a lien, and was not an innocent purchaser of these notes. Moran v. Wheeler, 87 Texas, 179; Rogers v. Houston, 94 Texas, 403; Eborn v. Cannon, 32 Texas, 343, 344; House v. Holland, 42 Texas Civ. App., 502; Lanier v. Foust, 81 Texas, 186; Hicks v. Morris, 57 Texas, 661; Keller v. Kirby, 34 Texas Civ. App., 404; 3 Ency. Ev., pp. 390 to 391 and notes.

When the bank finally acquired these notes it took only such equity as Vesey had therein and was to pay its "pro rata part" of the Vansickle debt. Same authorities.

*Bennett & Jones,* and *H. C. Connor,* for Watson and Watson.—The trial court erred in foreclosing in favor of either plaintiff or the defendants Pearl Warren and R. J. Thomas, as against the defendants Ras. and J. W. Watson, the vendor's lien on and ordering the sale of said two fifty acre tracts or any part of them owned by defendants Ras Watson and J. W. Watson to satisfy that part of the judgment against the defendants Pearl Warren Thomas and R. J. Thomas and J. B. Vesey, based upon the $800 note. Miller v. Rogers, 49 Texas, 398; Rippetoe v. Dwyer, 49 Texas, 504; Krause v. Pope, 78 Texas, 478.

The Appellate Court erred in rendering judgment in favor of either plaintiff or defendants, Pearl Warren and R. J. Thomas, foreclosing as to the $200 note the vendor's lien on and ordering the sale of the two fifty acre tracts or any part of them owned by the defendants, Ras and J. W. Watson, except on the condition that the Davidson tract should not sell for enough to pay off and satisfy that part of the judgment based upon said $200 note.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This suit was brought by Henry Vansickle as administrator of the estate of M. W. Vansickle against R. J. and Pearl W. Thomas as makers of two promissory notes for $200 and $800, respectively, for part of the purchase money of a tract of 203 acres of land, and against J. B. Vesey, O. L. Davidson, J. W. Watson and Ras Watson,

to recover judgment for the amount of the notes against the makers and for foreclosure of the vendor's lien on the land against all the defendants.

The First National Bank of Stephensville came into the case as intervener.

A statement of the pleadings is unnecessary. The questions for decision and the relations of the parties to them will best be developed by a statement in chronological order of the transactions out of which they arose: (1) Sale by M. W. Vansickle to R. J. and Pearl W. Thomas of the land in controversy, January 24, 1903, in which the notes sued on were taken, as part of the consideration, and a lien on the land was reserved in the conveyance. (2) Sale of the land by the Thomases to J. B. Vesey. Before this, however, Vesey was indebted to the First National Bank of Stephensville, which held a mortgage on a tract of land which he was to convey to the Thomases in exchange for the land in controversy, and the deed was therefore executed by the Thomases to the Bank, to be held by it as security for Vesey's debt in the place of the land conveyed to them. This deed to the bank was dated February 4, 1903, expressed a cash consideration of $2037.50, and was made subject to the notes sued on. It was not recorded until April, 1904, and, in the transactions which followed, Vesey seems to have been treated as the holder of the title, the real conditions between him and the bank being known only to them. Vesey was known to the bank, but not to others, to be insolvent. It was the understanding between the bank and Vesey that the latter should sell the land and turn in the purchase money, in notes or otherwise, on his indebtedness. (3) On January 15, 1904, Vesey made two written contracts, one with J. W. Watson and the other with J. A. White, in which he agreed to sell to each of them fifty acres of the land on exactly the same terms, viz.: five notes of each for $125 each, payable on the first days of November, 1906, 1907, 1908, 1909 and 1910, and 'the making of specified improvements on each tract. Vesey was to execute deeds and the vendees were to execute the notes, and these were to be deposited in bank (not the intervener), to be held in escrow until each vendee had cleared and put in cultivation at least twelve and one-half acres of the land bought by him, when the notes and the deeds were to be delivered to the vendor and vendees respectively. The vendees had already entered into possession and begun improving the land under the verbal understanding reached before the written contract was prepared, and they have held possession and continuously improved ever since. The deeds and notes were executed and deposited in bank as agreed. This trade was known to the bank, when made, and it agreed with Vesey to take the White and Watson notes in part payment on his indebtedness. (4) Vesey negotiated a sale of the 103 acres of the tract in controversy to O. L. Davidson, and, in order to carry it out, he paid to Vansickle the entire interest due on both the Thomas notes and one-half of the principal of the $800 note, and secured from Vansickle, April 24, 1904, a release of the 103 acres from the lien securing that note but not from that securing the $200 note. This release recites that the $800 note has been paid

in full and that the 103 acres was all the land conveyed by Vansickle to Thomas "except two tracts of fifty acres each sold by J. B. Vesey, the present owner .of said tract, to one J. W. Watson and one White." It was agreed between Vesey and Vansickle when this release was executed that it would not affect the lien on the other 100 acres. (5) On April 25, 1904, Vesey conveyed the 103 acres to O. L. Davidson in exchange for a stock of goods. This deed and the Vansickle release were recorded April 27, 1904. When he acquired his title Davidson knew of the purchases, possession and improvements of the two fifty acre tracts by White and Watson and that the notes, afterwards delivered by Vesey to the bank, were for the purchase money. (6) Watson and White having completed the improvements to be made as a condition precedent to the delivery of their notes to Vesey and of his deeds to them, the notes were delivered to him and by him sent to the bank and his deeds were delivered to the purchasers, all as previously agreed. This occurred about May, 18, 1904. At the time their notes were delivered, Watson and White knew that Davidson had bought the 103 acres from Vesey. There is no evidence that they knew of the release and the accompanying agreement between Vesey and Vansickle. (7) The bank, in May, 1904, after being advised of Watson's and White's compliance with their contracts as to improvements, accepted their notes from Vesey as part payment of his indebtedness, in accordance with its previous agreement, and then delivered to him its deed for the .203 acres, dated February 1, 1904, which stipulated that Vesey assumed the Vansickle notes. (8) On November 7, 1904, White conveyed to defendant, Ras Watson, the fifty ·acres bought from Vesey in consideration of $200 and Watson's assumption of the five notes given to Vesey. The value of the land released by Vansickle to Vesey was greater than the amount due on the notes of the Thomases held by the former, and either the land claimed by White and Watson or that claimed by Davidson is worth largely more than the balance due on the $200 note. This statement is made in harmony with the findings of fact of the Court of Civil Appeals with the addition of some facts appearing without dispute. There is a conflict in the evidence as to some facts about which the opinion of the Court of Civil Appeals is silent. No findings by the trial court appear in the record.

It was the contention of the Watsons and the bank that the release by Vansickle of the land conveyed to Davidson from the lien of the larger .note had the effect of releasing also the other tracts from that lien. This contention was denied by the District Court but sustained by the Court of Civil Appeals, and this holding of the latter· court is the occasion of the application for writ of error by plaintiff.

There was also a contention between the Watsons and the bank on one side and Davidson on the other as to whose lands should be first charged to pay the smaller note. The District Court held that the 100 acres owned by the Watsons and the 103 acres owned by Davidson should be subjected equally, and, by the judgment, charged upon each one-half of the amount due on that note, but the Court

of Civil Appeals held that, inasmuch as Vesey retained an interest in the land sold to. Watson and White to the extent of the unpaid purchase money, which exceeded the amount due on the smaller note, their' tracts should be subjected first. Of this holding the Watsons and the bank complain in their application for writ of error to this court.

The Watsons and the bank, to exempt the land of the former from the lien of the larger note, rely upon the familiar principle, applied by courts of equity in marshaling securities, that, where land subject to a lien is divided by its owner into parcels and sold to different persons at different times, the parcels are chargeable to pay the debt in the inverse order of their alienation; from which results the further proposition that if the lienholder, with knowledge of the facts, release from his lien a tract thus made primarily chargeable, those liable after it are also held to be released so far, at least, as may be found necessary to prevent injury to those purchasing them. If Watson and White had acquired complete title to, and had paid for, the land claimed by them, before the release and the conveyance to Davidson, there would be no difficulty in applying the principle in their favor. On the other hand, if the facts were, simply, that the purchasers who were first in time still owed the purchase money to the person owing the debt secured by the original lien, or to some one standing in the place of that person, we think relief could be easily given to all without injury to any. Such simple cases are well covered by the authorities. But the real difficulties in this case grow out of the additional facts which complicate the situation; and, as the principle we are considering has nothing technical about it, but is founded upon enlarged views of natural justice, no consideration affecting the justness of its application must be overlooked. What were the positions assumed by those interested in the sale first contracted by Vesey before the second, in which the release was executed, was made to Davidson? A contract was in existence under which Watson and White were bound to make improvements, part of which were already made, and to allow the delivery to Vesey of their notes held in escrow. Vesey was bound, upon the completion of the improvements and the delivery of the notes, to allow the delivery of the deeds to White and Watson. He was also bound by his agreement with the bank to see that the notes of White and Watson were delivered to it; and the bank was bound to receive those notes in payment of a part of Vesey's secured indebtedness to .itself. To get the benefit of their contract and of the part of the improvements already made, it was necessary that White and Watson complete those improvements and see that their notes were delivered. The rights of each of these parties were thus fixed between themselves—of Watson and White to the land, with the improvements they were to make upon it—of the bank to the notes, and of Vesey to the credit upon his indebtedness. With affairs in this condition Vesey conveys to Davidson the remainder of the land originally subject to the lien and Vansickle voluntarily releases his lien on the tract last sold. Thereafter the other parties merely did what they had previously bound themselves to do. The con-

tentions of the plaintiff in error, Vansickle, against the holding of
the Court of Civil Appeals, that this release also discharged the land
of White and Watson are, (1) that it does not sufficiently appear
that Vansickle, when he executed it, knew of the prior sales to White
and Watson; (2) that the doctrine relied on is inapplicable, because
Watson, White and the bank, before ·consummating their trades with
Vesey, had notice of the release and of the conveyance to Davidson
and are therefore not entitled·to protection; (3) that no injury can
result to White and Watson and the bank by subjecting the land of
the former to plaintiff's debt, since the notes of the former for the
purchase money are unpaid and the amount necessary to satisfy plain-
tiff can be deducted therefrom without wrong to the bank, as it occu-
pies no better position than Vesey would occupy if he still held the
notes.

(1)   We agree with the Court of Civil Appeals that the reference
in the release itself to the sales to White and Watson, uncontradicted
and unexplained, is sufficient evidence that Vansickle then knew of
those sales and that this was knowledge of what might prove to be
their rights sufficient to enable them to invoke the rule under dis-
cussion.

(2)   It is not found by the Court of Civil Appeals that Watson
and White and the bank had notice of the release when they carried
out their previous agreements with Vesey; nor is it at all clear that
any of them had such notice.   Davidson testified, in substance, that,
in a conversation between himself and Watson, after the witness had
bought and before the notes and deeds between Vesey and Watson
were delivered, he told Watson that in his trade with Vesey he "had
to get a release of an eight hundred dollar note," and that was the
first witness knew about the note.   This is all the evidence we find
as to actual notice to any of these parties of the release.   It was of
record, but we do not regard the record as notice of its existence
for such a purpose as this.   The purpose and effect of registration
of such a paper were to notify persons subsequently acquiring the
note from Vansickle that its lien had been released and thereby to
protect Davidson and others purchasing the land sold to him from
that lien.   The land which Watson and White were buying and on
which the bank was acquiring a lien was not the subject of nor
directly affected by the release.   It was discharged, if at all, only
as an indirect legal consequence of the operation of the release upon
the other tract.   But if we should assume that these parties knew
of the existence of the release, as well as of the conveyance to David-
son, we can not see that the fact would have obliged them to recede
from their respective positions already assumed under their contracts,
or have justified them in so doing.   What fact did the release show
that ought to have impelled them to that course?   It recited the pay-
ment of the $800 note and released the 103 acres, saying nothing
as to the lien on the other 100 acres, but showing on its face that
Vansickle knew of the sale thereof to Watson and White.   It was
not apparently prejudicial to Watson and White and the bank but,
on its face, was consistent with the rights which they were claiming
and now assert under their preexisting contract.   Nothing in it

called upon them, either for their own protection or as a measure of good faith towards others, to refrain from the further execution of their contract, which execution, besides the completion of the improvements by Watson and White, consisted merely of the acts necessary to the formal investiture of their title to the land and of the bank's title to the notes. Rights had arisen before the release and the conveyance to Davidson which the owners thereof could not be expected to abandon; and if in the bare exercise of those rights they put themselves in a situation in which the lien asserted by plaintiff can not be enforced without injury to them, that injury can not be inflicted on them in order to relieve plaintiff from the consequences of the voluntary act of his intestate for which they were in no way responsible.

(3) We thus come to the question whether or not the enforcement of plaintiff's lien on the land of the Watsons would be inconsistent with rights of the other parties. The principle upon which the others rely would deny to the plaintiff an enforcement of his demand against the land in controversy only to prevent the infliction of injustice upon them as a consequence of the release of the other tract. If that demand can be enforced without subjecting the land of the Watsons to any greater sum than they owe for it, and without depriving any other party of any right, there would be no just reason for giving to the release the effect which the defendants ascribe to it. But that this can be done must be clear. If loss must result to any one from Vansickle's act, it must fall on his estate and not on others. The contention now under review depends on the assumption that the bank occupies no better position that Vesey would occupy if he still held the White and Watson notes. Vesey secured the release upon the agreement with Vansickle that the latter's lien on the land in controversy should not be affected by it. Vesey is personally bound for Vansickle's claim. Either fact would be an answer to any defense he could set up against the claim of plaintiff to satisfaction out of the notes given to him by White and Watson. But neither of them is true of the bank. It is not in the same position as Vesey. It was Vesey's creditor, with a mortgage on the entire 203 acres as security. It agreed, in the sale to Watson and White, to accept their notes as a partial payment upon Vesey's indebtedness, and to release the mortgage, all of which was afterwards carried out. We have seen that these parties were not bound to abandon their trade because of Vansickle's and Vesey's subsequent transactions, even if they knew of them. The rights of the bank in these notes originated prior to the execution of the release and when all the land was subject to plaintiff's lien. It, and not Vesey, owns the notes that are sought to be made the basis of relief to plaintiff. It seems obvious that it ought not to be required to surrender its rights to save plaintiff from loss, when the loss is to result from no fault of its own, but from Vansickle's ill considered action. It is true that it is found that the evidence fails to show that Vansickle knew of any rights of the bank and we shall assume that to be the case. Vansickle knew of Watson's and White's purchases and can only be saved from the discharge of their land from

his lien by crediting upon their notes given by them for the pur-
chase money the amount with which their land is to be charged.
The answer to the contention that this should be done is that those
notes belong to the bank and its rights can not be sacrificed to pro-
tect plaintiff. Knowledge on the part of Vansickle of the rights of
the bank is not a fact essential to this view. The fact that the
rights of the bank, as we have held they did, existed before the exe-
cution of the release seems to put an end to the contention that be-
cause the bank is found by the Court of Civil Appeals not to have
been an innocent purchaser when it received possession of the notes
that therefore it is in no better position than Vesey. But that, in
any view that can be taken, such an acquisition of the notes as
that shown by the record was in due course of trade and for a
valuable consideration is put beyond controversy by the decisions
of this court. Greneaux v. Wheeler, 6 Texas, 528; Alstin v. Cundiff,
52 Texas, 463, 464; Blum v. Loggins, 53 Texas, 136, 137. If it be
material to inquire whether or not the bank took "without notice,"
we must answer the question, without notice of what? The phrase
usually refers to some defense of the maker of a note, or to some
claim of title to it other than that of the seller, with or without
notice of which, a purchaser has taken it. In the sense of the
principles of the commercial law, the bank, perhaps, could not be
said to have acquired title to the notes when they were deposited
in escrow in such way as to free it from any defense the makers
might have had to them, or from the claim of title of any other per-
son to them. This case does not depend upon the principles of the
law merchant, but upon those of equity. By those principles, in
order to protect all the equities of all the parties, it is necessary to
treat the rights of White and Watson and of the bank, arising from
the contracts when they were entered into, as if those contracts had
been then as fully performed as they afterwards were. And that is,
substantially, what their rights were when Vansickle and Vesey had
the subsequent transactions out of which the trouble arose. We have
not been able to see, however, that even at the time when the notes
were delivered to the bank it had notice of any facts which should
affect the question we are now considering. It does not appear that
it knew anything of the release and the accompanying agreement
between Vesey and Vansickle that the lien on land not released
should not be affected, and those are the facts out of which the
questions arise. The finding therefore that the bank was not an
innocent purchaser can not stand as a reason for sustaining plain-
tiff's contention. We have said that Vesey was personally liable and
the bank not so liable for plaintiff's debt, because the deed from
the bank to him shows that he assumed it. In his testimony given
in the case he tries to make it appear that, in their transactions,
the bank was to pay the debt, which is denied by witnesses for the
bank; but he can not in this way contradict the stipulation in the
deed which is the exclusive evidence of the agreement on that point.
Starbird v. Cranston, 24 Colo., 20; Blood v. Crew-Levick Co., 177
Pa. St., 606; s. c., 55 Am. St. Rep., 742. And if the bank seeks
to take benefit under his contract, it is bound by the same rule which

precludes him from contradicting by parol the written evidence of that contract. Johnson v. Portwood, 89 Texas, 248, and cases cited in 17 Cyc., 752. This takes out of the case the only evidence on which it could be said that the bank has no better right than Vesey and that its property can be taken to protect the Watsons in having their land subjected to plaintiff's claim. We conclude that the Court of Civil Appeals correctly held that the land of the Watsons was discharged from the lien of the larger note. But, for the reasons given in reaching this conclusion, we must hold that the ruling that the fact that the purchase money is unpaid is a reason for subjecting to the lien of the $200 note the land of the Watsons in order to protect that of Davidson is erroneous. That holding proceeds on the assumption that the right to the purchase money was still in Vesey when the sale to Davidson was made. But we have held that under these peculiar facts the purchase money due from White and Watson should be regarded in equity as having been, from the first, due to the bank. Whether or not if the assumption just referred to were well founded it would sustain the holding of the Court of Civil Appeals, we need not decide. This disposes of all the objections urged to the judgment below.

Upon the point first discussed the judgment of the Court of Civil Appeals will be affirmed, and, upon the second point, both judgments will be reformed so as to foreclose plaintiff's lien for the amount due on the $200 note upon all of the land; but to order that of Davidson to be first sold to pay the debt, and that of the Watsons to be sold only to pay any balance left after the proceeds of the first sale have been applied.

*Affirmed in part; Reversed and rendered in part.*