## JOHNSON v. JOHNSON. (No. 1012–5197.)

Commission of Appeals of Texas, Section B. March 13, 1929.

Lee, Lomax & Wren and W. D. Caldwell, all of Fort Worth, for plaintiff in error.

McLean, Scott & Sayers, of Fort Worth, for defendant in error.

SPEER, J. The disposition of this case involves a construction of the following contract:

"This agreement made and entered into this 10th day of September, 1919, by and between Gilbert S. Johnson, hereinafter called first party and Hazel S. Johnson, his wife, hereinafter called the second party, both of the city and county of San Francisco, State of California.

"Witnesseth, that, Whereas the parties hereto are now husband and wife, and differences have arisen and do now exist between them the result whereof is that the said parties have lived separate and apart since on or about the first day of November, 1914, and have become definitely and finally convinced that it will be impossible for them now, or hereafter, to live together as husband and wife, and the second party is about to commence suit for divorce against the first party, and

"Whereas the parties desire to settle all questions as to their respective property rights between themselves, and have been fully and independently advised by their respective counsel in regard thereto.

"Now, therefore, in consideration of the mutual covenants each to the other running, the parties hereto have agreed and do hereby agree as follows, to-wit:

"First: The personal effects of the parties and the household effects of the community have been heretofore divided between them,

"Second: The first party does and by these presents contract, convenant and agree, and bind himself, his estate, his heirs, executors and administrators to well and truly pay to the second party the sum of one hundred and fifty dollars ($150.00) on the first day of each and every calendar month hereafter, and commencing on the first day of September, 1919, during the life time of said second party, or until she remarries, the said sum of one hundred and fifty dollars ($150.00) to be delivered to the said second party, or to be deposited to her sole and exclusive account in some bank designated by the said second party, or her attorney, acting under her express authority.

"Third: That the said first party does by these presents contract, covenant, and agree and hereby binds himself, his estate, heirs, executors and administrators to well and truly pay the said second party, in addition to the various sums of money heretofore agreed by him to be paid to said second party, the sum of Twenty-five hundred dollars ($2500.00), said sum of twenty-five hundred dollars to be paid by the said first party to the said second party as follows, to-wit:

"The sum of five hundred dollars ($500.00) on the first day of March, 1920; the sum of five hundred dollars on the first day of September, 1920; the sum of five hundred dollars on the first day of March, 1921, the sum of five hundred dollars on the first day of September, 1921; and the sum of five hundred dollars on the first day of March, 1922; the said installments of five hundred dollars to be paid to the said second party at said times by delivering the same to the said second party, or by depositing the same to her sole and exclusive account in some bank designated by the said second party or by her attorney acting under her express authority.

"Fourth: The said second party does by these presents agree to accept the said several sums of one hundred and fifty dollars ($150) per month on the first day of each and every calendar month hereafter, commencing on the first day of September, 1919, and during her life, or until her remarriage, and the additional sum of twenty-five hundred dollars ($2500.00) payable in installments as hereinabove set forth, as and for and in full of her right and claim in and to any interest in the community property of herself and the said first party, as well as in full of her right and claim to alimony, support and maintenance from the said first party.

"Fifth: The first party upon the execution of this agreement hereby agrees to pay to the said second party the sum of seventy-five dollars ($75.00) the said second party hereby agrees to accept said sum in full payment of any and all right to alimony or maintenance to and including the 31st day of August, 1919.

"Sixth: The said parties hereto do hereby agree that whatever property the said first party now has, be the same community or separate property, and whatever property he may acquire shall henceforth be considered as and be his separate property, and that whatever property the said second party now has, be the same community or separate property shall henceforth be considered as and be her separate property.

"Seventh: The said parties hereto further agree that the only child of the said parties, Junior Johnson, of the age of about twelve years and ten months, shall henceforth be and remain in the custody and care of said second party, said first party to have the right to see said child at any reasonable and convenient time.

"In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.

"[Signed]   Gilbert S. Johnson.

"Hazel S. Johnson."

Hazel S. Johnson sued her former husband, Gilbert S. Johnson, upon the above contract to recover for sums then due and unpaid, and the defendant, under a plea alleging the failure of consideration to the extent of $60 per month for the support of their child, recovered an offset in that amount, and upon appeal that judgment was affirmed. (Tex. Civ. App.) 6 S.W.(2d) 175. The writ of error has been granted to Hazel S. Johnson.

It is first contended, and the Court of Civil Appeals sustained that contention, that the matter had been previously adjudicated in a suit in the Seventeenth district court of Tarrant county, wherein this plaintiff in error had recovered in full for certain monthly installments—that the defense urged in this case was res adjudicata. But it is unnecessary for us to decide that question, for we are of the opinion, irrespective of the former adjudication, no judgment such as that rendered below can be allowed to stand.

■ Of course, in the absence of an attack upon the integrity of the contract, no oral evidence can ever be admitted the effect of which is to contradict, vary, or add to the obligations of the instrument. This is academic. It is well settled, however, that the consideration expressed in a contract may often be inquired into and even be varied or contradicted. This, however, is not an exception to the elementary rule just announced, but is a just limitation upon its application. When, the recited consideration may be varied by parol evidence without impairing the obliga-

tions of the contract, the rule itself has no application. The general rule has been defined to be: "That the consideration to be shown by the parol evidence must be consistent with that stated in the writing, otherwise the evidence cannot be admitted." 22 Corp. Jur. tit. Evidence, § 1565. By this is meant the evidence must be consistent with the obligations of the contract, and not merely identical with its recitations as to consideration. The same authority in the succeeding section (1566) declares: "Where the effect of parol evidence contradicting the consideration expressed in the instrument or showing the true consideration to be different therefrom would be to change or defeat the legal operation and effect of the instrument, or to add new matter to an agreement complete upon its face, the evidence is not admissible; for in such case it comes within the rule which forbids the introduction of parol evidence to vary, contradict or defeat a written instrument and not within the exception of that rule that parol evidence is admissible for the purpose of contradicting or showing that the true consideration is other and different from that expressed within the writing."

The true rule, however, is better stated in a later section (1569) as follows: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of payment of a monied consideration, and is of a contractual nature, as where the consideration consists of a specific and true promise by one of the parties to do certain things, this part of the contract can no more be changed or modified by parol or extrinsic evidence than any other part, for the party has the right to make a consideration of the agreement of the essence of the contract, and when this is done the provision as to the consideration by the contract must stand upon the same plane as to the other provisions of the contract with reference to conclusiveness and immunity from attack by parol or extrinsic evidence."

This latter statement of the rule is well supported by the Texas authorities as follows: Van Sickle v. Watson, 103 Tex. 37, 123 S. W. 112; McCormick v. Kampmann, 102 Tex. 215, 115 S. W. 24; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825. Thus a written undertaking to pay a sum for a recited consideration of the delivery of a horse may be defended by showing through parol evidence that the real consideration was a cow, where such defense would be material. But should the instrument recite the consideration to be the delivery of a horse, certainly it could not be varied by showing that the real undertaking was to deliver a cow. This would be violative of the most elementary rules of evidence. Where the consideration is contractual rather than recitative, the parol evidence rule saves the instrument from destruction or impairment through parol testimony. Other-

wise, it is said, "would be to work in a circle, and to permit the very evil which the rule was designed to prevent." James v. Doss (Tex. Civ. App.) 184 S. W. 623.

So that if the oral evidence upon which the defendant recovered the recoupment or offset below was incompetent under the parol evidence rule—that is, if the contract itself clearly expresses a consideration which is contractual—then the judgments are wrong, and this brings us to an examination of the contract upon this point.

First, the purpose of the parties is expressed to be a desire to settle all questions as to their respective property rights. In the execution of that purpose the husband promised to pay to the wife the sum of $150 on the first day of each and every calendar month thereafter during her lifetime or until she remarries, the same to be delivered to her or to be deposited to her sole and exclusive account in some bank designated by her or her attorney. He further promised to pay to her the sum of $2,500 upon terms stated "to her sole and exclusive account." It is further recited that the payments stipulated for are "in full of her right and claim in and to any interest in the community property of herself and the said first party (husband) as well as in full of her right and claim to alimony, support and maintenance from the said first party." The parties then agree that the property of the respective parties shall henceforth be considered as separate property respectively, and, finally, that their only child, then about 12 years of age, "shall henceforth be and remain in the custody and care" of the wife; the husband to have the right to see it at any reasonable and convenient time. Clearly, we think, this shows that the payments of the monthly installments promised were upon the expressed consideration of an agreed adjustment of the property rights between the parties, and was therefore contractual in its nature.

We have no means of knowing that the relinquishment by the wife of her community interests was an inadequate consideration for the husband's promise, nor are we concerned with his inquiry since the validity of the contract is not attacked in this particular. Such contracts are enforceable, as abundantly shown by the authorities cited by the Court of Civil Appeals. It is expressly stated, more than once, that the sums thus paid are to be the sole and separate property of the wife. This is contractual. If, in whole or in part, the consideration was that she should support their child, then the same would not be her sole and separate property, for such use for the benefit of the child would be to relieve to some extent at least a legal obligation which rested upon the father, and clearly would impose an obligation beyond the expressed relinquishment of her community rights and alimony. Not only is the contract silent upon the question of whether the

**808**

wife assumed the duty of supporting the child, but the features which we have pointed out clearly show an agreement that the payments should be wholly hers. Moreover, no implication can be indulged, from the fact that the wife was to have the custody and care of the minor, that she therefore was to bear the expense of maintenance and support. The terms are not synonymous at all. On the contrary, such an inference is negatived, for the stipulated monthly payments were to continue during the lifetime of the wife or until she remarries. This itself conclusively shows that the sums promised were by agreement to be hers individually.

The only authority for permitting the offset recovered by defendant in error was the parol testimony to show that the consideration for the promised monthly installments was in part the maintenance and support of the minor child. Such evidence being incompetent to contradict the terms of the written contract, the same cannot be considered by any court as a basis for judgment. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533.

■ Nor can the allowance to defendant in error be sustained as a statutory offset or counterclaim, because that right is concluded by the contract with respect to the consideration. The necessary effect of what we have said is to preclude the allowance whether as for failure of consideration, offset, counterclaim, recoupment, or what not. Upon the uncontradicted evidence—that is, the written contract—judgment should have been rendered for the plaintiff for the amount of the payments shown to be due and unpaid.

We therefore recommend that the judgments of the trial court and of the Court of Civil Appeals affirming it be reversed, and judgment be here rendered for plaintiff in error for the sum of $4,410.25, and the further sum of $58.21 court costs as awarded by the trial court, together with 6 per cent. interest from and after April 4, 1927.

CURETON, C. J. Judgments of the District Court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.