**COBB–HOLMAN LUMBER CO. v. LIECHTY et al.**

No. 1510—5807.

Commission of Appeals of Texas, Section A.

July 22, 1931.

G. W. Gibson, of Jacksonville, and Smithdeal, Shook, Spence & Bowyer, of Dallas, for plaintiff in error.

W. H. Flippen and John T. Gano, both of Dallas, for defendants in error.

HARVEY, P. J.

This suit was instituted in the fall of 1927, by the Cobb-Holman Lumber Company, against Mrs. Cora Liechty, J. W. Mott, and others, seeking to recover on a vendor's lien note, with foreclosure of the vendor's lien on the land. The trial court gave judgment for the defendants, and that judgment has been affirmed by the Court of Civil Appeals. 30 S.W.(2d) 356.

The facts are substantially as follows:

On November 27, 1917, one L. O. Herrington conveyed the land in question to Mrs. Anna Schultz, as her separate property. For part of the purchase money, Mrs. Schultz and her husband, Frank Schultz, executed the note in controversy, which was for the principal sum of $7,500, due two years after date, and which provided for interest at the rate of eight per cent. per annum from date until paid. The vendor's lien was duly reserved in the deed to secure payment of said note. Herrington transferred the note to the Campbell State Bank at Palestine. Afterwards, on February 1, 1921, the Schultzes paid the bank $1,500 and accrued interest on the note, and on the same day, by an extension agreement in writing between said parties, the maturity date of the balance due on the note was extended to January 27, 1924. This extension agreement was promptly recorded. About the time that this extension agreement was made, the bank transferred the note to Dr. Hackler of Dallas. In November, 1922, Frank Schultz, with the knowledge and consent of his wife, executed timber deeds to S. A. Cobb for all the pine and hardwood timber on the land, the timber to be cut and removed within five years. Cobb transferred to the Cobb-Holman Lumber Company all the rights he acquired under those instruments. In November, 1923, Schultz and wife conveyed the land to J. W. Mott, who assumed payment of the vendor's lien note in controversy.

By mesne conveyances, the land was acquired by George Griffith on August 15, 1924. The conveyance to Griffith was made subject to the vendor's lien note in controversy, and the deed recited a cash consideration of $10 paid by Griffith. The situation then was that the Cobb-Holman Lumber Company claimed to own the timber rights under the Frank Schultz timber deeds; Griffith owned the land and claimed the timber thereon; Dr. Hackler owned the vendor's lien note which was secured by a lien on the timber and the land. Shortly after this, Dr. Hackler placed the note in the hands of an attorney for collection, and thereafter, on October 8, 1924, George Griffith executed to the lumber company a timber deed. By the terms of that instrument Griffith conveyed to the lumber company all the timber on the land, with provision for the cutting and removal of the timber within the space of two years from the date of said instrument. The only provisions of this timber deed which need be set out here, read as follows:

"Know all men by these presents: That I Col. George Griffith, of the County of Dallas, State of Texas, but now temporarily in Cherokee County, Texas, for and in consideration of the sum of Five Hundred Dollars cash to me in hand paid by Cobb-Holman Lumber Company, of Jacksonville, Texas, the receipt of which is hereby acknowledged, and the further consideration of the assumption and agreement to pay by said Cobb-Holman Lumber Company, one vendor's lien note on the land hereinafter described for the principal sum of Seventy-five Hundred Dollars, which note now amounts to the sum of Six Thousand Dollars and accrued interest; said note having been executed and delivered by Frank Schultz and wife to L. O. Herrington, and now owned and held by Dr. Hackler, of Dallas, Texas, and which note has been placed in the hands of C. L. Allen, Esq., for collection. It being agreed and understood that said Cobb-Holman Lumber Company is to pay the accrued interest on said note up to date, and whatever attorney's fees due thereon, and that the said note is to be assigned in writing from said Dr. Hackler to Cobb-Holman Lumber Company, without recourse on said Dr. Hackler. And it is further agreed and understood that said Cobb-Holman Lumber Company are to carry said note for a period of two years from date hereof at the agreed rate of six per cent. interest from this date, and one additional year at the rate of seven per cent. per annum, providing said grantor herein, Col. George Griffith, pays the taxes on said land each of said years, and all back taxes on said land, and pays the interest on said note annually from date hereof. And in the event that said note should about to become past due for four years, that said Col. Griffith will execute a renewal agreement with said Cobb-Holman Lumber Company, its successors or assigns, prior to the expiration of said four years from date of maturity thereof. * * *"

This timber deed was recorded October 14, 1924. On October 10, 1924, Dr. Hackler trans-

ferred the vendor's lien note "without recourse" to Gus S. Blankenship; and the latter, on October 14, 1924, transferred the note "without recourse" to the Cobb-Holman Lumber Company. A few days later the lumber company sold and conveyed the timber on said land, together with all timber rights, to other parties, for $8,000 cash. In November, 1924, George Griffith conveyed to one McInnis the land in question, subject to the vendor's lien in controversy herein, for $10 in cash. The deed by which this conveyance was made was signed and acknowledged in September, 1924, but was not delivered until some two months later. Mrs. Cora Liechty acquired the land from McInnis, subject to the vendor's lien note in controversy; the deed to her so reciting. Afterwards the lumber company brought suit on said note, seeking, among other things, to foreclose the vendor's lien on the land as against Mrs. Liechty. The latter pleaded, in effect, that the lumber company became obligated, under and by virtue of the timber deed executed to the company by George Griffith, to pay off and discharge said note, and that, the timber rights having been sold by the lumber company for an amount in excess of the amount due on said note, the note became satisfied and the lien securing same discharged. At the trial, Mrs. Liechty, over the objection of the lumber company, introduced in evidence the testimony of George Griffith, to the effect that it was orally agreed between Griffith and the lumber company, at the time the timber deed of October 8, 1924, was executed, that if, within a period of two or three years, the lumber company "could sell off the timber so to be conveyed to them by me, for a sufficient amount to pay the balance due on said note, then and in that event said note was to be marked paid and cancelled, and the lien against said property released and discharged."

The trial court submitted to the jury a single special issue reading as follows: "Do you find from the evidence that the plaintiff in this case, Cobb-Holman Lumber Company, as a part of the consideration for the timber deed executed to them by Col. George Griffith, agreed to pay off and cancel the note sued on in this case?" The jury answered this "Yes." The trial court proceeded to render judgment for the defendants.

■ A decision of the case depends upon the proper interpretation of those provisions of the timber deed from Griffith to the lumber company which have been quoted. If considered without reference to the context, the first provision as to the "assumption and agreement" by the lumber company "to pay" the note in controversy would import an obligation on the part of the company to satisfy the note by payment. But, according to the authorities, that provision must be construed in the light of all the other relevant provisions contained in the instrument, and such meaning be ascribed to the first provision as the instrument, as a whole, shows to have been intended by the parties. Bryant Co. v. Hamlen, Ind. Sch. Dist., 118 Tex. 255, 14 S.W.(2d) 53. When the provision, which seemingly purports an agreement on the part of the lumber company to assume and pay the note, is thus construed, the meaning which the parties attached to that provision is brought to light. For by the next succeeding clauses this meaning is explained by language which describes with particularity what the lumber company was bound to do in fulfillment of its agreement; which language unmistakably shows that a purchase of the note by the lumber company was meant. For it is there provided that "the note is to be assigned in writing" to the Lumber Company, and that the company was to "carry said note for a period of two years," etc., and that Griffith was to pay interest on the note annually from the date of said timber deed. It thus reasonably appears from the written instrument itself, that its terms do not comprehend either an absolute or a conditional obligation on the part of the lumber company to satisfy the note. Nor does it appear from the instrument that any obligation of the lumber company, other than those disclosed there, was contemplated. On the contrary, the degree of particularity, which was employed in setting out the various things which the lumber company promised to do, is such as to imply a purpose to embody in the writing all the terms of the lumber company's agreement. The law presumes that this purpose was carried out; and, since the language of the several provisions, considered as a whole, is susceptible of no meaning, in respect of the lumber company's relation to the note, other than that the company was to become the holder of the note, there is no ambiguity to be cleared up by extraneous testimony. The testimony of Griffith, to the effect that the lumber company agreed to pay the note, if the timber was sold for a sufficient sum within a specified time, would but introduce into the contract an obligation which the provisions of the written instrument do not embrace. This, under the authorities, cannot be done by parol testimony, notwithstanding such provisions relate to the consideration for the conveyance, they being contractual, and there being no fraud, accident, or mistake involved. East Line & R. R. Co. v. Garrett, 52 Tex. 133; Coverdill v. Seymour, 94 Tex. 1, 57 S. W. 37; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Vansickle v. Watson, 103 Tex. 37, 123 S. W. 112; Johnson v. Johnson (Tex. Com. App.) 14 S.W. (2d) 805.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals affirming same be reversed, and the cause be remanded.

**CURETON, C. J.**

Judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.