## SINCLAIR REFINING CO. v. BEST.

### No. 4776.

Court of Civil Appeals of Texas. Amarillo.

June 21, 1937.

Adkins, Pipkin, Madden & Keffer, of Amarillo, for appellant.

Richard S. Morris, of Claude, for appellee.

JACKSON, Chief Justice.

The appellee instituted this suit in the county court of Armstrong county against the appellant to recover the sum of $551.79; alleged a breach of contract, and fraudulently inducing him to pay for personal property he purchased from C. F. Farrell a consideration of $192 in excess of the amount he originally agreed to pay.

He alleged that about July 7, 1932, he entered into a contract with the appellant by the terms of which he became the wholesale dealer to sell and deliver the gasoline, oil, and other products of appellant in the town of Claude and the surrounding territory, and that for his services he was to receive a commission on all sales made by him of said products; that it was agreed as a part of the contract that if he increased the quantity of the sales of gasoline to 10,000 gallons per month that appellant would not close him out, and, relying on this agreement as a part of the consideration, he entered into the contract with appellant as its wholesale dealer; that he operated as such dealer until January 27, 1936, and during the time increased the quantity of the sale of gasoline to 10,000 gallons per month, on which date, without notice, cause, or justification, appellant checked him out and terminated his agency, causing him to sustain damages in the sum of $75 per month; that he was further damaged in the loss of commissions on sales to R. W. McKinney, which would have reasonably amounted to $100 per month, and, at the time he was closed out, appellant was due him $16.79 under his contract which it had failed and refused to pay.

The petition does not state for how many months he would sustain $75 per month damages, nor for how many months he would sustain $100 per month damages.

He alleges that a few days prior to entering into the contract, and in anticipation thereof, he had agreed to purchase the equipment of C. F. Farrell, who preceded him as wholesale dealer of appellant in Claude, for a consideration of $58, but, before closing the contract of agency, he was induced by appellant to pay the sum of $250 for such equipment upon the false representations that such price was required and customary; that such procedure was the usual and ordinary method in changing wholesale dealers; that he relied on such representations and believed that, should he be closed out, he would be assured of a price for the equipment in proportion to the price he was induced to pay, and, so believing, he paid C. F. Farrell the sum of $250, and was thereby damaged in the amount of $192.

All the items of expenses claimed by appellee were eliminated on appellant's exceptions thereto.

The appellant answered by exceptions and a general denial.

On a trial before the court without the intervention of a jury, judgment was rendered for appellee for the sum of $150, with 6 per cent. interest thereon, together with costs.

The record discloses that appellee and appellant entered into a written contract on July 7, 1932, by the terms of which appellee became appellant's wholesale dealer in gasoline, oil, and other products in certain territory for a stipulated commission; that he entered upon the services as wholesale dealer and continued until January 27, 1936, when the contract was discontinued. The written agreement is complete with nothing omitted, so far as we can ascertain from it or the record, and, among other things, provides:

"Either party may terminate this agreement at any time with or without cause; and upon the termination thereof the Agent shall forthwith deliver to the Company or its representatives all equipment, property, products, monies, credits, books of account, and station records of whatsoever form, entrusted to him or coming under his control.

"This agreement cancels and supersedes all previous agency and employment agreements between the parties. * * * All proposals, negotiations and representations with reference to the matters covered by this agreement are merged in this instrument, and no amendment or modification of this agreement shall be valid unless evidenced by a writing signed by a repre-

sentative of the Company authorized to sign this instrument."

The contract nowhere provides any definite period of time which it shall continue. The above is the only stipulation as to its termination.

Under the pleading, this contract could not be varied by parol testimony. Guarantee Life Ins. Co. v. Davidson (Tex.Com. App.) 234 S.W. 883.

On July 1, 1933, a new contract was signed between the parties, which is identical in all respects with the one signed on July 7, 1932, including the preceding quotation. Appellee did not plead any false representations inducing him to enter into the written contract, nor did he plead that anything was omitted therefrom by fraud, accident, or mistake.

He testified, notwithstanding the parol evidence rule urged by appellant, that at the time he entered into the written contract on July 7, 1932, that orally: "I was promised if I built the agency to 10,000 gallons per month it wouldn't be closed"; and that the promise was repeated during the time of his operation, and, when he was closed out, he was averaging the sale of 10,000 gallons per month.

The consideration in the written instrument was contractual, and, since there was no allegation of fraud, accident, or mistake, parol evidence of the oral promise not to close him out was not admissible and had no probative force; 17 Tex.Jur. 854; Johnson v. Johnson (Tex. Com.App.) 14 S.W.(2d) 805; hence, under the allegation and proof he was not entitled to recover any damage for the alleged breach of contract.

To sustain his allegation that appellant's agents by misrepresentations induced him to pay to C. F. Farrell $192 more for certain personal property than he had theretofore contracted to pay, he testified that he had closed a deal with Mr. Farrell to purchase his equipment for $144, and paid that amount; that about a week thereafter a Mr. Beard, assistant district manager of the Fort Worth office, and a salesman, Mr. Larkin, together with appellee's brother, who was in the employ of the company, came to Claude. "And we, in turn, went to Amarillo and met Mr. Coe and Mr. Farrell in Sinclair's office in Amarillo, and Mr. Coe told me my brother told him at the time they bought the agency they wanted $300.00, and he was expecting his money, $300.00, or Sinclair would suffer the consequences. And then Mr. Beard and Mr. Larkin told me that unless I paid that additional amount my brother would be fired, or words to that effect, because he was the one that had made the sale. * * * He told me I would be checked out and my brother would lose his job.

 It is manifest that this testimony does not support the false representations alleged by appellee to have been made to him and which induced him to believe that, if he was closed out, he would receive a price for the equipment in proportion to what he had paid. It is elementary that the allegations must be sustained by the testimony.

We deem it unnecessary to discuss the other similar errors assigned, as they may be avoided on another trial.

The judgment is reversed and the cause remanded.